**STATE of Tennessee, Appellee,**

v.

**Prescott FISHER, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Oct. 27, 1983.

On Petition to Rehear Nov. 28, 1983.

Permission to Appeal Denied by Supreme Court March 5, 1984.

Melvin G. Turner, Memphis, for appellant.

William M. Leech, Jr., Atty. Gen. & Reporter, Raymond S. Leathers, Asst. Atty. Gen., Nashville, Philip Gerald Harris, Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

JAMES C. BEASLEY, Special Judge.

Prescott C. Fisher, Jr. has appealed as of right from his conviction for forcible rape and twenty-year sentence resulting from a jury trial in the Criminal Court of Shelby County. The victim of this offense was Deborah Myrick.

The only issue presented for review is whether or not proof of another rape allegedly committed by the same defendant on Diane Holland was admissible to show identity.

We will first summarize the material facts concerning each incident.

Deborah Myrick and her nine-year-old son were living at 1903 Hobbits Roost in the Sycamore Ridge Apartments near Bartlett, Tennessee. Ms. Myrick testified that on September 15, 1981, she went to bed around 10:00 p.m. and fell asleep between 10:15 and 10:30 p.m. while watching the news on television. Her son was sleeping in another room. She was awakened by someone shaking her. Upon awakening, she realized that a man was lying on top of her. The man was black and naked except for a pantyhose mask over his face. The man said, "[D]on't scream; your child is asleep. Do what I tell you to do and I

won't hurt you and I won't hurt your child." He then removed her panties and continued talking to her. He asked her for a date, reminded her that her child was sleeping in the same apartment, and repeatedly told her that she would not be hurt if she did as he said.

The man began kissing her and as he did so he removed the hood from his face and turned the television set off. He kissed her on the stomach and vaginal area and finally engaged in sexual intercourse with the victim forcibly and against her will. At the time of penetration, his penis, which the victim described as being small, was not erect. However, she believed that he did reach a climax. After the act was completed, the man remained on top of Ms. Myrick for a brief time, then got up and while standing by the bed engaged in conversation. He questioned the victim as to her name, phone number, and place of employment. Before he left, he stated that he would be back and told her that there was no point in calling anybody.

The rapist appeared calm and gave the impression that he thought of the victim as his girl friend. He did not use any abusive or profane language; from his voice it appeared that he was educated. As soon as the man left, the victim wrapped a towel around herself and fled to her sister's house, located about one and a half miles away. Her sister called the police and her brother-in-law returned to the scene to see about the child. Upon returning to the apartment with the police, the victim discovered that her purse had been emptied out on the sofa and a credit card and a coin purse containing a small amount of money were missing. She was later taken to a Rape Crisis Center and examined.

In a statement to the police, Ms. Myrick described her assailant as a male black, about five feet five inches tall, one hundred fifty pounds, with short hair and a medium complexion. Fingerprints found at the scene were determined either to be not the defendant's or inadequate for comparison. Chemical tests of semen stains found on the bedsheet and towel were inconclusive.

Hair samples submitted for examination did not include any from a person of the black race.

Mr. and Mrs. Jerry Tacker, next-door neighbors of Ms. Myrick identified the defendant as the person they saw looking through the window into the Myrick apartment at approximately 9:30 p.m. on September 23, 1981. The defendant was again seen in the apartment area on October 10 and October 28. On the latter date, the police were called after one of the neighbors blocked defendant's car. When the defendant returned to his car and asked what was going on, the officer questioned him as to what he was doing in the apartment complex. The defendant stated that he was visiting a friend and gave an address. The officer was unable to verify the name and/or address and arrested the defendant at that time.

On October 29, 1981, a lineup was conducted and Ms. Myrick made a positive identification of the defendant as the person who raped her. She also made an in-court identification of the defendant at trial.

After first hearing it out of the presence of the jury, the Court allowed evidence of the rape of Diane Holland to be presented to the jury.

Ms. Holland lived in the Raleigh Hills Apartments which are located approximately two miles from Ms. Myrick's address. On June 23, 1981, she went to bed around 11:00 p.m. She had a portable television set in the room which was on when she went to sleep. She was awakened around 4:00 to 4:30 a.m. by a man shaking her. He was on the bed with his hand on the back of her neck and holding a knife in front of her face. The man was naked and kept telling her, "Don't you move. I've got a knife." He then told her he was going to place a pillow over her head and turn her over. The man had turned the sound down on the television and had turned the brightness control all the way to dark. When Ms. Holland pleaded with him not to hurt, her, he said, "I won't. Just do as I tell you to do and you won't get hurt." She de-

scribed his voice as soft-spoken, polite and almost reassuring. He sounded well-educated and never got loud or rough.

After he removed her panties, the man kissed Ms. Holland on the stomach and performed oral sex on her for a few seconds. He then penetrated her vaginally with a semi-erect penis which she described at the "jury out" hearing as being very small. After climaxing, the man laid there a few minutes before getting up. While dressing, he told the victim not to call the police because it would not do any good. Ms. Holland later found things laid out from her purse and nine or ten dollars was missing.

At a lineup on October 29, 1981, Ms. Holland made positive voice identification of the defendant as the person who raped her. She had only been able to physically describe her assailant as a small black man, possibly shorter than her, and told the police that she would only be able to make a voice identification.

It was also developed that some time after the lineup and prior to the trial, Ms. Holland sought to have the defendant's bond increased because she had encountered the defendant while in the neighborhood where he lived, and he had told her, "I raped you once; I'm going to do it again."

Other evidence of the Holland rape included testimony that a hair recovered from a tank top or tube top found in the room after the rape exhibited the same microscopic characteristics as the known head hair of the defendant.

A stain on this garment was found to contain seminal fluid. Expert testimony with reference to the non-motile sperm and seminal fluid recovered and examined in the Myrick case and the seminal fluid from the Holland case did not exclude nor establish the defendant as the donor.

The only witness called by the defense was Ms. Dorothy Jean Fisher, the defendant's ex-wife. Ms. Fisher testified that she was divorced from the defendant in February of 1979. She said her husband always wore a moustache, that while married they had a good sex life, and that in her opinion her husband had a large penis.

The rule governing admissibility of evidence of other crimes not charged in the indictment is so well established that it is common knowledge in the legal profession and has been reiterated and applied in a great variety of factual contexts by the Supreme Court of this State. We find this observation by Judge Oliver as he began a most thorough analysis of the law on this subject in *Pruitt v. State*, 3 Tenn.Cr.App. 256, 460 S.W.2d 385 (1970). He quoted from 20 Am.Jur. *Evidence* § 309, page 287, the following general rule:

> " 'A person, when placed upon trial for the commission of an offense against the criminal laws, is to be convicted, if at all, on evidence showing his guilt of the particular offense charged in the indictment against him. It is a well-established common-law rule that in criminal prosecution proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged in the indictment, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged, unless the other offenses are connected with the offense for which he is on trial.' "

However, evidence of an independent crime is properly admissible if it is relevant to some matter actually at issue in the case on trial and if its probative value is not outweighed by its prejudicial effect upon the accused. *Bunch v. State*, 605 S.W.2d 227, 229 (Tenn.1980). *Carroll v. State*, 212 Tenn. 464, 370 S.W.2d 523 (1963) contains this summary:

> "The general principle to be collected from these, and other authorities, is that evidence of another crime or crimes than that charged in the indictment and for which defendant is on trial, is not admissible unless such evidence is relevant to prove his guilt of that crime. The test of relevancy is furnished not by law, but by logic and general experience."

In *Harris v. State*, 189 Tenn. 635, 227 S.W.2d 8 (1950), the Supreme Court suggests that we:

"... begin with the rule that proof of a crime other than that alleged in the indictment, is not admissible against a defendant unless it tends directly to prove him guilty of the offense for which he is on trial, and then proceed to consider the exceptional circumstances which may render such proof directly relevant."

One of these "exceptional circumstances" arises when proof of other crimes is necessary to establish the identity of the defendant. *Warren v. State*, 178 Tenn. 157, 156 S.W.2d 416 (1941).

Evidence of independent crimes committed by the accused is only admissible if the ground for relevance is actually at issue in the case on trial. When the ground for relevance is the defendant's identity, the rule should not be avoided if the defendant admits that he committed the act charged but bases his defense on some other ground, such as self defense, or if his identity is established by other evidence and is no longer in issue. *Bunch v. State, supra,* at 230.

In the instant case, the defendant had been positively identified by victim Myrick both at lineup and in court during trial. While no defense of alibi was raised, it cannot be said under this record that identity was conceded. By vigorous cross-examination, Ms. Myrick was tested as to the means and opportunity of her identification. It was developed by defense counsel that she had made a "looks like" identification of a color photograph and a later positive identification of a black and white photograph of Ralph William Blunt as her assailant. Ms. Myrick testified that defendant had a small penis and stated on cross-examination that he did not wear a moustache. This was challenged through the testimony of defendant's ex-wife that he always wore a moustache and had a large penis.

As Judge Duncan stated in *White v. State*, 533 S.W.2d 735, 744 (Tenn.Cr.App. 1975):

"There is no way that it can be said that one eyewitness or one victim, or any one piece of evidence, alone or in combination, will prove identity to the jury's satisfaction beyond a reasonable doubt, when, after the State rests, a defendant may present one, two or several alibi witnesses to show that the State's proof is incorrect."

As was the case in *Caruthers v. State*, 219 Tenn. 21, 406 S.W.2d 159 (1966), the question of identity constitutes the crucial point in this case; therefore, evidence of the Holland rape, which would identify the defendant as the person who raped Ms. Myrick, is relevant and admissible if it meets the other required criteria.

Under the rule as announced in *Wrather v. State*, 179 Tenn. 666, 169 S.W.2d 854 (1943):

"... to render evidence of an independent crime admissible, the proof of its commission, and of the connection of the accused on trial therewith, must be 'not vague and uncertain' but clear and convincing."

The testimony of Ms. Holland is sufficient to establish that she was raped. Her positive identification of the voice of the defendant as that of her assailant, plus the testimony of the hair and fiber expert linking the defendant to the semen-stained garment found in the room after the rape, sufficiently connects the defendant to the independent crime.

When evidence that the defendant committed another crime is offered to prove his identity as the perpetrator of the crime on trial, the *modus operandi* of the other crime and of the crime on trial must be substantially identical and must be so unique that proof that the defendant committed the other offense fairly tends to establish that he also committed the offense with which he is charged. *Bunch v. State, supra.* The Court in *Bunch* quoted with approval from *United States v. Powell*, 587 F.2d 443 (9th Cir.1978), as follows:

" 'The probative value of evidence of other crimes where the issue is identity de-

pends upon the extent to which it raises an inference that the perpetrator of the prior offenses was the perpetrator of the offense in issue. Both the existence and the strength of an inference proceeds through an evaluation of the similarities between the prior offense and the charged crime. Thus, if the characteristics of both the prior offense and the charged offense are not in any way distinctive, but are similar to numerous other crimes committed by persons other than the defendant, no inference of identity can arise. An inference of identity from prior crimes can only arise when the elements of the prior offense and the charge offense, singly or together, are sufficiently distinctive to warrant an inference that the person who committed the prior offenses also committed the offense on trial.... The probative value of evidence of other crimes on the issue of identity always depends upon the strength of the inference; when the inference of identity is weak, evidence of prior crimes should be excluded because under such circumstances the prejudicial effect of the evidence inevitability outweighs the probative value of that evidence.' 587 F.2d at 448."

■ Defendant contends that the *modus operandi* of the Myrick and Holland crimes are not sufficiently identical and unique to meet the test for admissibility.

Significant similarities revealed by this record are:

(1) Each victim was shaken awake.

(2) In each case the rapist was on the bed when he awakened the victims.

(3) On first contact in each instance, the man had no clothes on.

(4) Each victim was told that she would not be hurt if she did as she was instructed.

(5) In both cases, the victims described their attacker as a small black man who was soft spoken, never loud or rough, and seemed well educated.

(6) In each case, the rapist removed the woman's panties but gave no attention to the upper garments.

(7) The man kissed each woman on the stomach and progressed to the vaginal area before intercourse.

(8) As to the intercourse, both women described the penis as small and semi-erect upon penetration.

(9) Both victims stated that the rapist exhibited a calm demeanor and that after the act he lingered by lying on top of them. After he got up, he engaged them in conversation and told them it was useless to call the police. One woman described his attitude as considering her a girl friend and the other as almost polite.

(10) The defendant told Ms. Myrick that he would be back and bragged to Ms. Holland that he had raped her before and would do it again.

(11) In each case, the contents of the victim's purse were emptied out and a small amount of money was taken.

We recognize that there were some distinct differences in the facts of the two rapes, including the use of a knife in one and no weapon displayed in the other and the pantyhose mask in one and not the other. However:

"... it is not necessary that the other crime be identical in every detail to the offense on trial; it is sufficient if evidence of the other crime supports the inference that the perpetrator of it, shown to be the defendant, is the same person who committed the offense on trial." *Bunch v. State, supra,* at 231.

We find that the proof of the Holland rape meets all the tests for admissibility. Its prejudicial effect does not outweigh its probative value, especially in view of the action taken by the trial judge at the close of the State's proof and in his written charge cautioning the jury that the evidence could be considered only for the limited purpose of establishing identity in the instant case.

Finding no error, we affirm the judgment of the trial court.

WALKER, P.J., and TATUM, J., concur.

## ON PETITION TO REHEAR

JAMES C. BEASLEY, Special Judge.

A petition to rehear has been filed in this case. It does not set forth any new matters which we did not consider and only reargues those matters already thoroughly argued by counsel and fully considered by us in reaching our original conclusion.

The petition to rehear is denied.

WALKER, P.J., and TATUM, J., concur.