IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 20, 2005 Session

**STATE OF TENNESSEE v. DONTE COLLINS**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2003-T-251   Monte Watkins, Judge**

---

**No. M2004-02564-CCA-R3-CD - Filed December 12, 2005**

---

The Defendant, Donte Collins, was convicted of driving under the influence ("DUI") and DUI per se. The trial court found that the Defendant had three previous DUI convictions and sentenced him for DUI, fourth offense, a Class E felony. The Defendant now appeals, contending that: (1) that the evidence contained in the record is insufficient to sustain his convictions for DUI and DUI per se; (2) the trial court erred when it allowed a police officer to testify about "clues" he gleaned from field sobriety tests because that was improper scientific testimony; (3) the trial court erred when it allowed the State to impeach the Defendant with his prior conviction for "a felony involving theft"; and (4) the trial court erred when it instructed the jury that it could infer that the Defendant was intoxicated based solely on his blood alcohol level. Finding no reversible error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Jeffrey A. Devasher, Nashville, Tennessee (on appeal) and Richard Tennent, Nashville, Tennessee (at trial) for the Appellant, Donte L. Collins.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Kristen Shea, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I. Facts**

This case arises from the Defendant's conviction for DUI and DUI per se. At the Defendant's trial, the following evidence was presented: Phillip Martin testified that he was driving

on Dickerson Road in Nashville during the evening of November 27, 2002, when he was struck from behind by another car as he was slowing down approaching a red traffic light. Martin stated that the Defendant rear-ended a car, causing it to rear-end Martin's car. He said that the Defendant's car appeared to have swerved in an unsuccessful attempt to avoid rear-ending the car directly in front of the Defendant's car. Martin noted that the front end of the Defendant's car was damaged, and that the Defendant's car had come to a stop on the sidewalk. He testified that the Defendant then got out of his car and ran down the street, "with a bunch of beer in his hand," without speaking to either of the other drivers involved in the accident. Martin added that there was a young girl in the car with the Defendant at the time of the incident, and she initially stayed in the car after the Defendant left but eventually went down the street after him. He testified that the Defendant and the girl returned after about five minutes, and the Defendant was no longer carrying the beer.

On cross-examination, Martin testified that he did not observe the Defendant having trouble walking or running at any point during the course of the incident. He further testified that, although he recalled seeing the Defendant running down the street with a six-pack of beer, he was uncertain whether he informed the police that the Defendant was carrying beer when Martin gave his statement to the officer at the scene.

Officer Michael Wilson of the Metro-Nashville Police Department testified that, when he arrived at the scene of the accident, he smelled alcohol on the Defendant, and the Defendant admitted drinking two beers earlier in the afternoon. Officer Wilson further stated that the Defendant's eyes were bloodshot and watery, leading him to believe that the Defendant may have been intoxicated. Furthermore, Officer Wilson testified that the Defendant was "quiet," which he attributed to the Defendant not wanting to speak with him, because the Defendant may have been afraid that the officer would smell alcohol on his breath. The officer also said that he administered a field sobriety test, in which the Defendant was asked to walk in a straight line, touching his heel to his toe on each step for a specified number of steps. According to Officer Wilson, the Defendant was able to walk in a straight line and took the appropriate number of steps, but was unable to consistently touch his heel to his toes.

Officer Wilson testified that he administered a second field sobriety test in which he instructed the Defendant to stand on one leg, with his other leg raised so that his foot was six inches off the ground, while keeping his arms at his sides and counting to thirty. He stated that the Defendant successfully counted to thirty and was able to keep his arms at his sides, but he was unable to keep his raised foot from touching the ground. Officer Wilson said that he then placed the Defendant under arrest for DUI, based upon the Defendant's inability to pass the field sobriety tests. Officer Wilson testified that he then brought the Defendant to the police station for booking and called for a technician to administer a breath alcohol test ("BAT").

On cross-examination, Officer Wilson testified that his police report did not note that the Defendant had blood-shot, watery eyes, or that the Defendant was quiet. Officer Wilson testified that on his police report he marked a box labeled "slight" referring to the effect that the alcohol was having upon the Defendant. The officer then testified that, although both of the other drivers

involved in the incident mentioned seeing the Defendant leave the scene with a six-pack of beer immediately following the accident, the officer neither marked this down in his police report nor did he question the Defendant about the beer. The officer also stated that the Defendant was cooperative during the incident.

Veronica Mayes, a civilian employee with the Metro-Nashville Police Department, testified that on November 27, 2002, she administered a BAT to the Defendant. Mayes stated that the test showed that the Defendant had a blood alcohol level of .12.

The Defendant testified on his own behalf, stating that, although he had consumed two beers earlier in the afternoon on the day of this accident, between three-thirty and four p.m., he was in fact sober at the time of the incident, which took place around five-thirty p.m. The Defendant further testified that, in the afternoon, his sister called him and asked him to watch her daughter while she went to her boyfriend's house to pick up some personal property. The Defendant stated that, while watching his niece, his sister called him, said she was arguing with her boyfriend, and asked the Defendant to pick her up. The Defendant said that he brought his niece with him because she knew how to get to the boyfriend's house, and the Defendant did not. The Defendant testified that, although he did leave the scene of the accident, he had no beer with him, and he left to call his niece's father because she was upset. The Defendant further stated that he was never confronted by any of the witnesses or by Officer Wilson regarding the assertions that he had left his niece behind at the scene of the accident and that he had left the scene with a six-pack of beer.

Based on this evidence, the jury found the Defendant guilty of DUI and DUI per se.

## II. Analysis

On appeal, the Defendant asserts that: (1) the evidence contained in the record was insufficient to sustain his convictions of DUI and DUI per se; (2) the trial court erred when it allowed a police officer to testify about "clues" he gleaned from field sobriety tests because that was improper scientific testimony; (3) the trial court erred when it allowed the State to impeach the Defendant with his prior conviction for "a felony involving theft"; and (4) the trial court erred when it instructed the jury that it could infer that the Defendant was intoxicated based solely on his blood alcohol level.

### A. Sufficiency of the Evidence

The Defendant alleges that there is insufficient evidence in the record to support his DUI conviction. When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Goodwin, 143 S.W.3d 771, 775 (Tenn. 2004) (citing State v. Reid, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v.

Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, and all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. Goodwin, 143 S.W.3d at 775 (quoting State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.; see State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000).

Under Tennessee law, to support a conviction for DUI, the State is required to prove, beyond a reasonable doubt, that the Defendant was driving or "in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys . . . while . . . [u]nder the influence of any intoxicant . . . ." Tenn. Code Ann. § 55-10-401(a)(1) (2004); State v. Butler, 108 S.W.3d 845 (Tenn. 2003). DUI per se is established when the State proves beyond a reasonable doubt that the Defendant was driving or "in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys . . . while . . . [t]he alcohol concentration in such person's blood or breath is eight-hundredths of one percent (.08 %) or more." Tenn. Code Ann. § 55-10-401(a)(2). A criminal offense may be established exclusively by circumstantial evidence. State v. Raines, 882 S.W.2d 376, 380 (Tenn. Crim. App. 1994) (citing State v. Hailey, 658 S.W.2d 547, 552 (Tenn. Crim. App. 1983)). However, before an accused can be convicted of a criminal offense based on circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant . . . ." Id. (citing State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971)). In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." Id. (citing Crawford, 470 S.W.2d at 613). We note that this Court has often found that an arresting officer's testimony alone is sufficient to support a defendant's conviction for DUI. See, e.g. State v. Vasser, 870 S.W.2d 543, 544 (Tenn. Crim. App. 1993).

In the case under submission, elements one and two, that the Defendant was driving a motor vehicle, and on a public road, are uncontroverted. The Defendant contends in his brief that there was insufficient evidence presented to prove element three, that he was under the influence of an intoxicant. We disagree. Viewing the evidence in the light most favorable to the State, it established that the police responded to an accident involving the Defendant, and upon arriving at the scene the police questioned the Defendant, who smelled of alcohol and admitted that he had been drinking earlier in the day. The police officer on the scene subsequently administered two separate field

sobriety tests, neither of which the Defendant completed successfully. Thereafter, the Defendant was placed under arrest and given a BAT, which BAT showed that his blood alcohol content was .12, above the legal limit. We conclude that this evidence is sufficient for a rational trier of fact to find the essential elements of DUI and DUI per se beyond a reasonable doubt.

## B. Expert Witness Testimony

The Defendant next claims that the trial court erred when it allowed Officer Wilson to testify about "clues" that he gleaned from the field sobriety tests that he administered to the Defendant. Specifically, the Defendant asserts that Officer Wilson's testimony about "clues" exceeded the bounds of what a layperson may testify about and constituted improper expert testimony. The record evinces that, at trial, the State called Officer Wilson to testify about his observations during the field sobriety tests that he administered to the Defendant. His testimony included the following exchange:

> Prosecutor: Have you had a moment to look at [the DUI test report] and refresh your recollection?
> Officer Wilson: Yes, ma'am.
> Prosecutor: Okay. What kind of clues, if any, did you see when he performed that test?
> Officer Wilson: He missed touching his toe to his heel on the first nine steps, as well as the second nine steps. And he stepped off the line on both paths, both paths of travel, both forwards and back.
> Prosecutor: Okay. Let me ask you this question: Do you have to touch your heel to toe all nine times to do it correctly?
> Officer Wilson: Yes. That's required.
> Prosecutor: Do you have to do it - - if you don't touch your toes, one, two, three, four, five times on your first pass, how many clues is that?
> Officer Wilson: That's one clue.
> Prosecutor: You don't get a clue for every time you miss your heel to toe?
> Officer Wilson: No.
> Prosecutor: If you don't touch your heel to toe on the second nine steps, no matter how many times you don't do it, how many clues is that?
> Officer Wilson: That's another clue. So, that would be clue two.
> Prosecutor: How may clues all together did you see - -

At this point the Defendant objected to the testimony as being improper expert testimony. The Defendant contended that allowing Officer Wilson to testify about the "clues" he saw gave the jury the impression that the field sobriety tests were being "scored" and that the officer should only be allowed to testify about what he observed. In pertinent part, defense counsel stated that "I thought the proper thing was just to say what [the Defendant] did and leave it up to the jury to draw their own conclusions. But, talking about clues sounds like we're getting into him having a score, and I think that's not proper." The trial court ruled that the officer could testify about his observations but not to any scientific opinions or conclusions. When testimony resumed, the State continued to

probe Officer Wilson about the "clues" he gathered:

> Prosecutor: And based on his demonstration, or his exhibition of those clues, what then, in your training are you required to do?
> Officer Wilson: With those clues?
> Prosecutor: Yes.
> Officer Wilson: Well, with those, I place him under arrest, believing that he was under the influence of an intoxicant, namely alcohol.

According to the Tennessee Rules of Evidence, if scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise. Tenn. R. Evid. 702. Evidence constitutes "scientific, technical, or other specialized knowledge" if it concerns a matter that "the average juror would not know, as a matter of course . . . ." State v. Bolin, 922 S.W.2d 870, 874 (Tenn. 1996).

With the exception of the horizontal gaze nystagmus ("HGN") sobriety test, field sobriety tests are not scientific tests requiring testimony of a qualified expert pursuant to Tennessee Rule of Evidence 702. See State v. Murphy, 953 S.W.2d 200, 202-03 (Tenn. 1997); State v. Gilbert, 751 S.W.2d 454, 459 (Tenn. Crim. App. 1988) (holding that "field sobriety tests are not 'scientific tests;, and the admissibility of the results is not to be governed by rules pertaining to the admission of scientific evidence"). In Murphy, the Tennessee Supreme Court addressed wither the HGN sobriety test constitutes "scientific, technical, or other specialized knowledge" under evidentiary Rule 702. Murphy, 953 S.W.2d at 202. The defendant in that case had been convicted based primarily on the results of a HGN test, which were described to the jury by the arresting officer. Id. The trial court held that the HGN test results did not constitute scientific results. Id. The Murphy Court reversed, concluding that the "HGN test does differ fundamentally from other field sobriety tests because the witness must necessarily explain the underlying scientific basis of the test in order for the testimony to be meaningful to a jury." Id. at 202. The Court went on to say in dicta that:

> Other tests, in marked contrast, carry no such requirement. For example, if a police officer testifies that the defendant was unable to walk a straight line or stand on one foot or count backwards, a jury needs no further explanation of why such testimony is relevant to or probative on the issue of the defendant's condition. A juror can rely upon his or her personal experience or otherwise obtained knowledge of the effects of alcohol upon one's motor and mental skills to evaluate and weigh the officer's testimony.

Id. at 202-03.

This Court addressed whether an officer's testimony that the presence of three or more "clues" indicates a blood alcohol content of .10% or higher crossed the line into scientific testimony in State v. William Thomas Jankowski, No. 03C01-9503-CR-00100, 1995 WL 686121 (Tenn. Crim.

App., at Knoxville, Nov. 15, 1995), *perm. app. denied* (Tenn. Apr. 1, 1996). In Jankowski, two police officers testified about "clues" gleaned from field sobriety tests and how those clues contributed to a determination that the appellant's blood alcohol content was .10 or higher. The Court summarized the facts before it stating:

> Officer Lilley testified that on the first test, the Walk and Turn test, he looked for 13 clues, that the presence of two or more clues indicates that the appellant's blood alcohol content is .10 or higher, and that the appellant exhibited seven clues. He only described one of these clues: the appellant overstepped "on the turn-around place," and the officer had to "grab" him. He further testified that the presence of three or more clues on the second test, the One Leg Stand, indicates a blood alcohol content of .10 or higher, and the appellant exhibited six clues.

Id. at *1. The Jankowski Court held, "When Officers Lilley and Ottinger went beyond observations of the appellant's performance and drew conclusions from their observations that the appellant's blood alcohol content was .10 or higher, this testimony took us into the area of scientific evidence." Id. at *2.

Unlike Jankowski, the officer in this case did not testify that any specific number of "clues" indicated the blood alcohol content of the Defendant, and, rather, his testimony was limited to the "clues" that he observed while the Defendant was performing the field sobriety tests. We have found multiple other cases where the facts indicated that a police officer testified about "clues" in the context of a field sobriety test, see e.g., State v. Danny Joe Wright, No. W2003-01025-CCA-R3-CD, 2004 WL 1813220, at *1 (Tenn. Crim. App., at Jackson, Aug. 12, 2004), *no Tenn. R. App. P. 11 application filed,* and some cases that indicated that the National Highway Transportation & Safety Administration has determined that a suspect who evinces two or more clues for either filed sobriety test can be considered too intoxicated to lawfully drive, see e.g., State v. Zane Allen Davis, Jr., No. M2000-00737-CCA-R3-CD, 2000WL 1879518, at * 2 (Tenn. Crim. App., at Nashville, Dec. 28, 2000), *no. Tenn. R. App. P. 11 application filed.* However, none of those cases addressed whether this testimony was proper. In fact, we have found no case in this state that has addressed whether testimony by an officer about "clues" alone takes us into the area of scientific evidence. Therefore, as this is a case of first impression, we turn to decide whether Officer Wilson's testimony about "clues" was improper.

The word "clue" is a layman's term, and not a term of art with special significance in the scientific community. To the contrary, Black's Law Dictionary gives a very general and rather equivocated definition of the word "clue," defining it as "Suggestion or piece of evidence which may or may not lead to solution of crime or puzzle." BLACK'S LAW DICTIONARY 256 (6th ed. 1990). Nothing in our understanding of the word "clue" suggests to us that its unqualified use in a police officer's testimony will be seen as positing a scientific or technical explanation for what the officer observed or how it may correlate with blood alcohol content. Accordingly, we conclude in this case that Officer Wilson's testimony did not put forth any scientific or quantitative analysis. Unlike the testimony offered by the officers in Jankowski, Officer Wilson did not set a specific number of clues

required to determine intoxication, and additionally, he made no statement regarding the correlation between the clues he observed and the Defendant's blood alcohol level. The fact that Officer Wilson used the word "clue" in describing the observed behavior does not make the testimony scientific in nature. While it may be a better practice for an officer to refrain from using the word "clues" when testifying about field sobriety tests, we hold that, in this case, Officer Wilson's testimony did not cross into the area of scientific evidence.

Further, even if Officer Wilson's testimony had been improper, review of this issue is governed by Rule 52 of the Tennessee Rules of Criminal Procedure, which states that, "No judgment of conviction shall be reversed on appeal except for errors which affirmatively appear to have affected the result of the trial on the merits." Further, Tennessee Rule of Appellate Procedure 36 provides, "(b) Effect of Error. A final judgment from which relief is available or otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Applying this standard and in light of the strength of the evidence presented against the Defendant, we conclude that he suffered no prejudice from the officer's testimony regarding "clues" observed in the course of administering the field sobriety tests. Thus, the Defendant's conviction cannot be overturned on the ground that the trial court erred in allowing the State to portray a prosecution witness as an expert in the interpretation of field sobriety tests.

### C. Impeachment with a "Prior Felony Involving Theft"
### 1. Prior Felony Convictions

The Defendant asserts that the trial court erred when it allowed the State to impeach him using his prior conviction for aggravated robbery. Prior to trial, the Defendant filed a motion in limine to prohibit the State from questioning him about his prior conviction. The trial court considered the motion and held that because aggravated robbery is primarily a crime of violence, its probative value is outweighed by its prejudicial effect. Before the Defendant testified, the State asked the trial court to reconsider the matter, and the trial court, reversing its earlier decision, ruled that the State could impeach the Defendant with his prior aggravated robbery conviction by referring to that conviction as "a felony involving theft." The Defendant asserts on appeal that this ruling by the trial court constitutes reversible error.

As a preliminary matter, we note that the admissibility of evidence is a question generally within the trial court's discretion. Otis v. Cambridge Mut. Fire Ins. Co., 850 S.W.2d 439, 442 (Tenn. 1992). "When arriving at a determination to admit or exclude even that evidence which is considered relevant trial courts are generally accorded a wide degree of latitude and will only be overturned on appeal where there is a showing of abuse of discretion." Id. A trial court's ruling under Tennessee Rule of Evidence 609 will not be reversed absent an abuse of discretion. Johnson v. State, 596 S.W.2d 97, 104 (Tenn. Crim. App. 1979). A trial court abuses its discretion in this regard only when it "'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999) (quoting State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997)).

Pursuant to Rule 609, Tennessee Rules of Evidence, the credibility of the defendant may be attacked by presenting evidence of prior convictions if certain conditions are met. First, the State must give reasonable pretrial notice of the impeaching convictions. Tenn. R. Evid. 609(a)(3). Second, the convictions must be punishable by death or imprisonment over one year or must involve a crime of dishonesty or a false statement. Tenn. R. Evid. 609(a)(2). Third, less than ten years must have elapsed between the defendant's release from confinement on the prior conviction and the commencement of the instant prosecution. Tenn. R. Evid. 609(b). Finally, the impeaching conviction's probative value on credibility must outweigh its unfair prejudice. Tenn. R. Evid. 609(a)(3).

In determining whether the probative value of a prior conviction on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues, a trial court should consider the similarity between the crime in question and the underlying impeaching conviction, as well as the relevance of the impeaching conviction with respect to credibility. State v. Waller, 118 S.W.3d 368, 371 (Tenn. 2003). The fact that a prior conviction involves the same or similar crime for which the defendant is being tried does not automatically require its exclusion. State v. Baker, 956 S.W.2d 8, 15 (Tenn. Crim. App. 1997); State v. Miller, 737 S.W.2d 556, 560 (Tenn. Crim. App. 1987). However, if "the prior conviction and instant offense are similar in nature the possible prejudicial effect increases greatly and should be more carefully scrutinized." Long v. State, 607 S.W.2d 482, 486 (Tenn. Crim. App. 1980). A trial court should first analyze whether the impeaching conviction is relevant to the issue of credibility. Waller, 118 S.W.3d at 371. Rule 609 of the Tennessee Rules of Evidence suggests that the commission of any felony is "generally probative" of a criminal defendant's credibility. Id. However, the Tennessee Supreme Court has rejected a per se rule that permits impeachment by any and all felony convictions. State v. Mixon, 983 S.W.2d 661, 674 (Tenn. 1999). A prior felony conviction still must be analyzed to determine whether it is sufficiently probative of credibility to outweigh any unfair prejudicial effect it may have on the substantive issues of the case. Waller, 118 S.W.3d at 371. To determine how probative a felony conviction is to the issue of credibility, the trial court must assess whether the felony offense involves dishonesty or a false statement. Id.

Robbery and theft offenses are crimes of dishonesty. See State v. Galmore, 994 S.W.2d 120, 122 (Tenn. 1999) (providing that robbery is a crime of dishonesty); Baker, 956 S.W.2d at 15 (providing that theft is a crime of dishonesty). Therefore, they are highly probative as to credibility. State v. Tune, 872 S.W.2d 922, 927 (Tenn. Crim. App. 1993).

In this case, the Defendant asserts that the trial court improperly allowed the State to impeach him with an "unnamed" felony. This Court has previously held that the practice of allowing impeachment via an unnamed felony conviction is unfairly prejudicial, because it allows the jury to unnecessarily speculate as to the type of felony actually committed. See State v. Barnard, 899 S.W.2d 617, 622 (Tenn. Crim. App. 1994). Subsequently, the Tennessee Supreme Court has cited Barnard approvingly, adding that "the proper application of the balancing test under Tennessee Rule of Evidence 609(a)(3) requires identification of the prior conviction." Galmore, 994 S.W.2d at 122. The Galmore Court went on to state, "instructing the jury on an unnamed felony would provide

inadequate information for a jury to properly weigh the conviction's probative value as impeaching evidence." Id.

The State asserts that by referring to the aggravated robbery conviction as a "felony involving theft," any prejudice resulting from the jury speculating as to the nature of the crime was greatly reduced. In support of this contention, the State argues that the case under submission is distinguishable from State v. Taylor, 993 S.W.2d 33, 35 (Tenn. 1999), in which the trial court allowed the State to impeach the defendant with a prior "felony involving dishonesty." The Taylor Court held that "[i]dentifying the *nature* of the prior conviction avoids confusion and speculation on the part of the jury and permits the jury to properly evaluate the conviction's probative value on the issue of credibility." (emphasis added). The Court concluded that "[t]he degree to which impeaching conviction is probative of untruthfulness can vary with the nature of the offense, even with felonies involving dishonesty" and went on to hold "that the offense must be identified to the finder of fact when a prior conviction is used for impeachment purposes pursuant to Rule 609(a)(3)." Id. at 35.

We conclude that the case under submission is distinguishable from Taylor in that the trial court required the State to refer to the Defendant's prior conviction as a "felony involving theft." Aggravated robbery is a theft offense, and robbery is clearly probative of credibility. Galmore, 994 S.W.2d at 122. Further, a conviction for theft is clearly one that involves dishonesty and is highly probative of credibility. Baker, 956 S.W.2d at 15. The trial court expressed its concern that the aspect of violence of an aggravated robbery conviction might prejudice the jury against the Defendant, and, to mitigate the prejudice, the trial court ordered the State to refer to the crime merely as theft. We conclude that the trial court did not abuse its discretion in this regard. The Defendant is, therefore, not entitled to relief on this issue.

## 2. Adequacy of the Trial Court's Limiting Instruction

The Defendant next contends that the trial court did not provide an adequate limiting instruction about how the jury should consider his prior conviction. During the jury instructions, the trial court failed to give a limiting instruction that a prior conviction could only be used to impeach the Defendant and not as proof that he committed the crime in question. The Defendant contends that the trial court committed reversible error by failing to provide the jury a limiting instruction. The State counters that, although the trial court did not single out the issue of the Defendant's prior convictions in the instructions dealing with impeachment, the trial court did provide a general impeachment instruction, and that the Defendant suffered no prejudice from the trial court's failure to give a limiting instruction specifically addressing the Defendant's prior conviction. The State further asserts that, because the Defendant did not request a specific limiting instruction and did not raise this issue in his motion for a new trial, the issue is waived.

Issues not raised before the trial court or in a motion for new trial are deemed waived. See Tenn. R. App. P. 36(a). In State v. Howell, 868 S.W.2d 238 (Tenn. 1993), the Tennessee Supreme Court addressed the issue squarely before us. In that case, the defendant claimed that the trial court

did not adequately instruct the jury about how it could consider proof that the defendant had committed other crimes. Id. at 254-55. The Court noted that the defendant failed to object to the court's omission of such instructions and failed to raise the issue in his motion for new trial. Id. It went on to discuss the "fundamental error" rule set out in the previous decision of State v. Reece, 637 S.W.2d 858 (Tenn. 1982), stating:

> In State v. Reece, . . . this Court held that where the State's case is weak and prior inconsistent statements admitted for impeachment are extremely damaging, the failure to give a limiting instruction that the statements are only to be considered on the issue of credibility may amount to fundamental error constituting grounds for reversal, even in the absence of a special request. Reece, 637 S.W.2d at 861. This holding, however, was "limited to those exceptional cases in which the impeaching testimony is extremely damaging, the need for a limiting instruction is apparent, and the failure to give it results in substantial prejudice to the rights of the accused." Id.

Id. The Court continued:

> Our review of the record convinces us that the "fundamental error" rule of State v. Reece, . . . is not applicable to this case. See id. An important factor for the court in Reece, was the fact that the prior inconsistent statements used to impeach were so damaging that the failure to give a limiting instruction, in essence, allowed the jury to consider the impeachment evidence as substantive evidence, and thereby allowed inadmissible hearsay evidence to take precedence over testimony given under oath by the witness on the stand. In this case, the testimony about the defendant's other crimes was relevant to his guilt, and no hearsay problems were involved.
>
> Accordingly, although there is a significant possibility of misuse with testimony about a defendant's commission of other crimes, and limiting instructions are critical in preventing improper and prejudicial use of proof of other crimes, see, e.g., State v. Fisher, 670 S.W.2d 232, 237 (Tenn. Crim. App. 1983), we conclude that the trial court did not commit reversible error in failing to give limiting instructions with respect to the proof of other crimes.

Id. The Court then held that the defendant "waived this issue by not requesting a limiting instruction and by not raising the issue in his motion for a new trial, Tenn. R. App. P. 3(e), and the failure to give limiting instructions was neither fundamental nor prejudicial error." Id. (citing State v. West, 767 S.W.2d 387, 396 (Tenn. 1989)). The Court determined that "the blame for the failure to give limiting instructions 'must be laid at the defendant's feet.'" Id. (citing Laird v. State, 565 S.W.2d 38, 40 (Tenn. Crim. App. 1978)).

In the case under submission, we conclude that "fundamental error" rule of Reece, is not applicable. As noted by the Howell Court, an important factor in Reece was the fact that the

impeachment evidence was so damaging that the failure to give the instruction allowed the jury to consider the evidence as substantive evidence. In this case, the Defendant was being tried for DUI and DUI per se, and he chose to testify on his own behalf. The trial court ruled that his credibility could be impeached with his prior conviction for a "felony involving theft." The testimony about the Defendant's prior felony theft conviction was relevant to the issue of his credibility, and the admission of this evidence did not, in essence, allow the jury to consider the evidence as substantive evidence of the Defendant's guilt of DUI and DUI per se. Accordingly, we conclude that the "fundamental error" rule in Reece is inapplicable and that the Defendant waived this issue by not requesting a limiting instruction or raising this issue in his motion for new trial. Further, we hold that the failure to give a limiting instruction was neither fundamental nor prejudicial error. The Defendant is, therefore, not entitled to relief on this issue.

### D. Instruction Regarding Inference of Intoxication

The Defendant next asserts that the trial court erred in instructing the jury that it could infer that the Defendant was intoxicated based upon his breath alcohol level. It is the Defendant's contention that when the jury instructions for the Defendant's DUI and DUI per se charges are read as a whole, they create an unconstitutional mandatory inference of guilt and that the jury could not have found the Defendant guilty of one charge without also finding the Defendant guilty of the other charge. The State contends that the case law does not support the Defendant's contention and that the trial court's instructions were entirely proper.

In addressing circumstantial evidence of intoxication based on a .10 blood alcohol level, (now .08) this Court has previously stated that:

> [W]e interpret this state's per se DUI statute, Tennessee Code Annotated § 55-10-401(a)(2) [2003], to mean that the subsequently obtained test results are presumptive evidence of the blood alcohol concentration at the time of driving without the necessity of extrapolation. Reliable test results obtained within a reasonable time after the accused motorist is stopped, reflecting a .10% blood alcohol level, standing alone, constitute circumstantial evidence upon which the fact finder may, but is not required to, convict of per se DUI.

State v. Wilmore Hatfield, No. M2002-00939-CCA-R3-CD, 2003 WL 535930, *7 (Tenn. Crim. App. 2003), *rev'd on other grounds* State v. Hatfield, 130 S.W.3d 40 (Tenn. 2004). Thus, it is clear that a jury may interpret a .10 blood alcohol level as proof of intoxication, however, it is also free to conclude otherwise.

In the case under submission, the trial court instructed the jury as follows:

> If you find from the proof that the defendant was found by means of a blood test to have ten-hundredths of one percent, point one-o percent or more by weight of alcohol in the defendant's blood, you, the jury, are permitted to infer that the

-12-

defendant was under the influence of such intoxicant, and that the defendant's ability to drive was therefore impaired sufficiently to constitute a violation of the law against driving under the influence of alcohol.

However, you are never required to make this inference.

The jury instruction was entirely in accord with this Court's ruling in <u>Hatfield</u>, stating that if the jury found the Defendant's blood alcohol level to be .10, the jury was at liberty to find that the Defendant was under the influence of an intoxicant, but that they were not required to do so. Therefore, we conclude that the jury instructions were not erroneous.

With regard to the Defendant's contention that, pursuant to the instructions given, if the jury convicted on one count they had no choice but to convict on the other, we note that DUI and DUI per se contain different elements. <u>See</u> Tenn. Code Ann. § 55-10-401(a)(1) & 401(a)(2). This Court has held that an acquittal of either would not necessarily mean that the state could not establish the elements of the other. <u>State v. Conway</u>, 77 S.W.3d 213, 218 (Tenn. Crim. App. 2001).

In <u>Conway</u>, the defendant was charged with DUI and DUI per se. <u>Id.</u> Ultimately, the jury acquitted the defendant of DUI, while finding him guilty of DUI per se. <u>Id.</u> In the case under submission, while it is true that the jury could have inferred that the Defendant was in fact intoxicated, based on his .12 blood alcohol level, thus, satisfying the third element of DUI per se, the jury could also have discredited the State's evidence that the Defendant had a blood alcohol level of .12 and still found the Defendant guilty of DUI based upon the testimony of Officer Wilson and Phillip Martin. Alternatively, the jury could have found the State's evidence that the Defendant had a blood alcohol level of .12 credible and found him guilty of DUI per se, without finding that the defendant was under the influence of the intoxicant and thus, could have found the Defendant not guilty of DUI. As such, we conclude that the jury instructions did not create an unconstitutional mandatory inference of guilt, and we affirm the Defendant's convictions.

### III. Conclusion

In accordance with the foregoing, we conclude that there exists no reversible error in the judgments of the trial court. Therefore, the judgments of the trial court are affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE

-13-